IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ARIELLE HARDY,<br><br>                      Plaintiff,<br>v.<br><br>D&D MANAGEMENT 2, LLC d/b/a ELEVATED COATINGS,<br><br>                      Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS<br><br>Case No. 1:24-cv-00066-TS-JCB<br><br>Judge Ted Stewart<br>Magistrate Judge Jared C. Bennett |

This matter comes before the Court on Defendant D&D Management 2, LLC d/b/a Elevated Coatings' ("Elevated") Motion to Dismiss.[1] As discussed below, the Court will grant the Motion in part and deny the Motion in part.

I. BACKGROUND

Plaintiff sues Defendant for alleged violations of Title VII of the Civil Rights Act of 1964[2], the Americans with Disabilities Act ("ADA"),[3] and Utah law.

The facts alleged in the Amended Complaint are as follows. In April 2021, Defendant hired Plaintiff, Arielle Hardy, as its Chief Financial Officer ("CFO").[4] Elevated installs and services epoxy coating for commercial properties.[5] Elevated is owned by Drake Myers, Devin

---

[1] Docket No. 19.

[2] 42 U.S.C. §§ 2000e *et seq.*

[3] 42 U.S.C. §§ 12111 *et seq.*

[4] Docket No. 18 ¶ 10.

[5] *Id.* ¶ 14.

Myers, and Bracken Ricketts.[6] While employed as CFO, Plaintiff was responsible for bookkeeping, cash-flow tasks, financial reports, payroll, accounts receivable and payable, tax reporting, HR, and scheduling.[7] Plaintiff alleges that during her time at Elevated she was subjected to sexual harassment and increasingly excluded from business activities, including an ownership trip, by the owners of the company.[8]

Plaintiff also alleges that in May 2022, she had an emergency, life-threatening health issue that required major abdominal surgery. She alleges that Drake allowed her a week off to recover, but in practice she was asked to work immediately after surgery while in the hospital.[9]

In October 2022, Plaintiff submitted her resignation stating that she had "no other choice" but to resign.[10] Thereafter, Plaintiff filed a charge of discrimination with the Utah Labor Commission Antidiscrimination and Labor Division ("the Division") alleging discrimination based on sex, disability, and retaliation.[11]

On November 29, 2023, the Division issued a Determination and Order concluding that Plaintiff failed to establish a prima facie case of discrimination based on sex, disability, harassment, or retaliation.[12] The Equal Opportunity Commission issued a Determination and Notice of Rights in February 2024 notifying Plaintiff that it adopted the finding of the Division and that she had the right to sue based on the Charge.[13] Subsequently, Plaintiff filed suit.

---

[6] *Id.* ¶ 13.
[7] *Id.* ¶ 15.
[8] *Id.* ¶¶ 17, 22, 32.
[9] *Id.* ¶ 23.
[10] *Id.* ¶ 39.
[11] *Id.* ¶ 42; Docket No. 20, at 13–14.
[12] Docket No. 20, at 36.
[13] Docket No. 18-1, at 1.

Plaintiff asserted claims under federal and state law alleging (1) Discrimination based on sex; (2) Discrimination based on disability; (3) Retaliation; (4) Wrongful Termination; (5) Hostile Work Environment; (6) Intentional or Tortious Inference with Economic Relations; and (7) Punitive Damages.

In May 2024, Defendant filed a motion to dismiss.[14] The Court subsequently granted the motion in part and denied it in part, and allowed Plaintiff to file an amended complaint to amend some of the dismissed claims.[15] The Court dismissed with prejudice: the Utah Antidiscrimination Act ("UADA") claims; Retaliation claims based on reporting asbestos and filing a charge with the Division; and the Wrongful Termination claim. Plaintiff filed an Amended Complaint in early 2025, after which Defendant filed the present Motion to Dismiss for Failure to State a Claim.[16] Having fully reviewed the parties' briefing and finding that oral argument would not be materially helpful,[17] the Court now rules on the Motion to Dismiss.

## II. LEGAL STANDARD

When evaluating a complaint under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[18] The plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[19] which requires "more than an unadorned,

---

[14] Docket No. 9.

[15] Docket No. 17.

[16] Docket No. 19.

[17] *See* DUCivR 7-1(g).

[18] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[19] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

the-defendant-unlawfully-harmed-me accusation."[20] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[21]

### III. ANALYSIS

Defendant asserts that the Court should dismiss the claims for Discrimination Based on Disability- Failure to Accommodate (Count II), Retaliation (Count III), and Intentional or Tortious Interference with Economic Relations (Count VI) under Federal Rule of Civil Procedure 12(b)(6). Defendant also argues that Plaintiff fails to plead plausible damages for her Hostile Work Environment (Count V), Retaliation, and Failure to Accommodate claims. Further, Defendant points out that Plaintiff reasserts claims previously dismissed with prejudice by the Court. The Court will address Defendant's arguments in turn below.

A. Discrimination Based on Disability- Failure to Accommodate

To state a prima facie case for failure to accommodate under the ADA, a plaintiff must show "(1) she was disabled, (2) she was otherwise qualified, (3) she requested a plausibly reasonable accommodation, and (4) the [employer] refused to accommodate her disability."[22] However, a prima facie case, "is an evidentiary standard, not a pleading requirement."[23] Therefore, the Court will use these elements only to aid its determination as to whether Plaintiff has stated a plausible claim under the ADA.

---

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[21] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[22] *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020); *see also Spielman v. Blue Cross & Blue Shield of Kan., Inc.*, 33 F. App'x 439, 443 (10th Cir. 2002) (citation omitted).

[23] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).

In its prior Order, the Court dismissed Plaintiff's Failure to Accommodate claim but allowed her to amend her Complaint to state a plausible claim. The Court instructed that "Plaintiff should enhance and add additional facts to support her disability."[24] The Court also concluded that the Complaint failed to "plead facts to support that Plaintiff was otherwise qualified, requested a plausible accommodation, and triggered the interactive process with Defendant."[25]

Under the ADA, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[26] Plaintiff asserts that her disability falls under subsection (A).[27]

Under § 12102(1), "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[28] "{A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."[29]

---

[24] Docket No. 17, at 9.

[25] *Id.* at 10.

[26] 42 U.S.C. § 12102(1).

[27] *Id.*

[28] *Id.* § 12102(2)(A).

[29] *Id.* § 12102(2)(B).

"The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. [It] is not meant to be a demanding standard."[30]

Defendant argues that the Amended Complaint fails to sufficiently allege Plaintiff's disability for a number of reasons. First, Defendant argues that Plaintiff does not explain why she had to get surgery and therefore, the allegations do not satisfy any of the ADA disability prongs.[31]

After review of the Amended Complaint and briefing, the Court concludes that Plaintiff sufficiently asserts a disability under the first prong: "a physical or mental impairment that substantially limits one or more life activities of [an] individual."[32] Defendant argues that the Amended Complaint fails under this prong because "[Plaintiff] does not allege how that impairment limited a major life activity before or after her surgery beyond it [sic] transitory or minor."[33] Defendant misunderstands the requirements for alleging a disability under the ADA, the limitation on transitory and minor impairments only applies to subsection (C), "being regarded as having such an impairment."[34] Further, under 42 U.S.C. § 12102(3)(B), "[a] transitory impairment is an impairment with an actual or expected duration of 6 months or less," and regulations explain that "the six-month 'transitory' part of the 'transitory and minor' exception . . . does not apply to the definition of 'disability' under the 'actual disability'

---

[30] 29 C.F.R. § 1630.2(j)(i).

[31] Docket No. 19, at 8.

[32] 42 U.S.C. § 12102(1)(A).

[33] Docket No. 19, at 8.

[34] 42 U.S.C. § 12102(1)(3)(B).

6

prong."[35] The Tenth Circuit has recognized that sister circuits "have held that temporary conditions may meet the definition of a disability for the 'actual disability' and 'record of' prongs under the ADAAA."[36] Accordingly, at this stage, the Court will not dismiss the failure to accommodate claim on this basis.

Defendant next argues that Plaintiff does not assert that her condition affected a major life activity, only that she needed surgery. The Amended Complaint pleads that Plaintiff "had an emergency, life-threatening health issue come up that required major abdominal surgery" and "[t]here was a concern that she had cancer as well."[37] In her Response, Plaintiff argues that her disability was "that she had a blood test that revealed markers showing she may have ovarian cancer, and that she needed to have surgery."[38] At this stage, this is sufficient to plead that her condition substantially limited a major life activity as defined in § 12102(1). Accordingly, the Court will deny the Motion on this basis.

Next, the Court finds that Plaintiff sufficiently alleges the remaining elements under a motion to dismiss standard. She alleges that she was otherwise qualified to work as CFO[39] and that she requested a plausibly reasonable accommodation. Specifically, that she asked for one week off from Drake to recover from her major abdominal surgery, which she admits he allowed. However, Plaintiff alleges that, in reality, Defendant failed to accommodate her

---

[35] 29 C.F.R. § 1630.2(j)(ix) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.")

[36] *Skerce v. Torgenson Elec. Co.*, 852 F. App'x 357, 362 (10th Cir. 2021). The ADAA is incorporated into the ADA and codified at 42 U.S.C. § 12101 *et seq.. See Adair v. City of Muskogee*, 823 F.3d 1297, 1299–3000 (10th Cir. 2016).

[37] Docket No. 18 ¶ 23.

[38] Docket No. 20, at 7.

[39] Docket No. 18 ¶¶ 15, 25.

7

disability by requiring her to work from the hospital after surgery and travel to conduct a meeting within the week. Defendant argues that this argument fails because the Amended Complaint does not allege who asked her to work from her hospital recovery room after surgery and drive five hours days after surgery. The Court finds that her allegations are sufficient under Rule 8 pleading standards. Accordingly, the Court will not dismiss this claim at this juncture.

B. Retaliation

The elements of a prima facie case of retaliation under Title VII are "(1) [the plaintiff] engaged in protected opposition to discrimination; (2) [the plaintiff] suffered a materially adverse employment action; and (3) there is a causal nexus between her opposition and the employer's adverse action."[40] As above, "[t]o survive a motion to dismiss, a plaintiff does not have to establish a prima facie case of retaliation in [their] complaint, but 'the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim.'"[41]

The Amended Complaint, like the original Complaint, pleads that Plaintiff engaged in protected activity in three ways. However, the allegations concerning the asbestos reports and Utah Labor Commission charge were dismissed with prejudice in the Court's prior Order[42] and will not be addressed by the Court here.

The Court allowed Plaintiff to amend her complaint to state a plausible claim based on her third protected activity allegation: that "she stood up against sexual harassment and other discrimination in the workplace."[43]

---

[40] *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006); *see Khalik v. United Airlines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

[41] *Davis v. BAE Sys. Tech. Sols. & Servs. Inc.*, 764 F. App'x 741, 744 (10th Cir. 2019) (quoting *Khalik*, 671 F.3d at 1192) (second alteration in original).

[42] Docket No. 17, at 10–11.

[43] *Id.* at 11.

Plaintiff's Amended Complaint adds sufficient allegations that she engaged in protected opposition to discrimination by telling Drake and Bracken multiples times via text messages and phone calls that "the environment created by the sexually harassing comments both on the company Slack channel and in person . . . was making her extremely uncomfortable and likely making others uncomfortable as well."[44] The parties do not contest that this is protected opposition and the Tenth Circuit has made it clear that "voicing informal complaints to superiors" regarding sexual harassment is protected opposition. [45]

"An adverse employment action constitutes 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits.'"[46] The Tenth Circuit takes a "case-by-case approach, examining the unique factors relevant to the situation at hand."[47]

The Amended Complaint alleges that Plaintiff was required to work even though she requested time off for surgery and she received "less and less" communication from Drake and Bracken as a result of raising sexual harassment issues.[48]

Some circuits, most notably the Fifth Circuit, have found that denial of leave can be considered an adverse employment action. However, generally, "[a] single denial of leave is not an adverse employment action when it affects leave on a specific date and time, but not the

---

[44] Docket No. 18 ¶ 77.

[45] *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (quoting *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2014)).

[46] *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237–38 (10th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

[47] *Neri v. Bd. of Educ.*, 860 F. App'x 556, 565 (10th Cir. 2021) (internal quotation marks and citation omitted).

[48] Docket No. 18 ¶ 80.

employee's amount of or right to take leave in general, because a reasonable employee would not have found the action to be materially adverse."[49] The Tenth Circuit has not addressed the issue but in following the Tenth Circuit "case-by-case" guidance, district courts in the Circuit have agreed with this distinction, concluding that one-time denials of leave are "too trivial to rise to the level of adverse employment action."[50]

Further, "an adverse employment action . . . does not extend to an alteration of job responsibilities."[51] Decreased communications that do not affect an employee's ability to do their job are also not considered adverse employment actions under Tenth Circuit case law.[52] Accordingly, neither of Plaintiff's allegations rise to the level of an adverse employment action and the Court will grant the Motion and dismiss Plaintiff's Retaliation claim.

C. Intentional or tortious interference

To plead a claim for tortious interference with economic relations, the complaint must state "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff."[53] "Utah courts have 'narrowly' defined improper means to encompass 'only those actions that are contrary to law, such as violations of statutes, regulations, or recognized common-law rules or actions that

---

[49] *Ogden v. Potters*, 397 F. App'x 938, 939 (5th Cir. 2010).

[50] *Dunlap v. Kansas*, 211 F. Supp. 2d 1334, 1343 (D. Kan. 2002); *see also Ellington v. Kendall*, No. 1:20-cv-00174, 2023 WL 2466090, at *17 (D. Utah Mar. 10, 2023).

[51] *Tran v. Trustees of St. Colls. in Colo.*, 355 F.3d 1263, 1267 (10th Cir. 2004) (internal quotation marks and citation omitted).

[52] *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620 (10th Cir. 2012) (concluding that when the plaintiff "continued to perform her duties satisfactorily[, it was] evidence that [the] decreased communications were not materially adverse.").

[53] *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553 (internal quotation marks and citation omitted).

violate an established standard of a trade or profession."[54] For example, "[a] non-exhaustive list of conduct that may constitute improper means includes 'violence, threats, or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood[s]."[55]

The Court previously dismissed Plaintiff's claim for Intentional or Tortious Interference with Economic Relations for failure to plead facts to support the improper means and injury elements.[56] The Court allowed Plaintiff to amend her Complaint to state a plausible claim and she refiled the claim in her Amended Complaint thereafter.

Plaintiff asserts that Defendant used improper means by violating common law by engaging in electronic communication harassment, defaming and slandering Plaintiff, and violating established standards of trade or profession as an unacceptable business practice.[57]

Under Utah law, a person can commit electronic communication harassment through a number of different actions,[58] none of which Plaintiff outlines or alleges in her Amended Complaint.

The amended Complaint alleges that Defendant defamed and slandered Plaintiff. "To establish a defamation claim under Utah law, a plaintiff must demonstrate "(1) the defendant published . . . statements in print or orally; (2) the statements were false; (3) the statements were

---

[54] *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 679 F. Supp. 3d 1196, 1217 (D. Utah 2023) (quoting *C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 3, 437 P.3d 343); *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2017 UT 75, ¶ 71, 416 P.3d 410.

[55] *Totally Quality Sys., Inc.*, 679 F. Supp. 3d at 1217 (internal quotation marks and citation omitted).

[56] Docket No. 17, at 16.

[57] Docket No. 18 ¶ 102.

[58] *See* Utah Code Ann. §§ 76-9-201(2)–(4) (2025).

not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages."[59] "A publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about the plaintiff. The plaintiff must show the statement's tendency to injure his reputation in the eyes of 'at least a substantial minority of its audience.'"[60]

Plaintiff fails to allege facts to support that Defendant defamed her. The Amended Complaint mirrors the original Complaint in pleading that Bracken texted TJ Bingham's ex-wife that an employee told him that Mr. Bingham and Plaintiff were sleeping together. This is the only specific statement alleged in the Amended Complaint. Plaintiff fails to sufficiently allege that this statement was published and that Defendant, Elevated, did so negligently.[61]

The Amended Complaint also alleges that Defendant intentionally interfered with Plaintiff's business relationships by violating established standards of the trade or professions but again does not include allegations regarding these practices or standards. Accordingly, the Court will grant the Motion and dismiss Plaintiff's claim for Intentional or Tortious Interference with Economic Relations.

D. Damages

Defendant asserts that the Amended Complaint fails to sufficiently plead damages for the Hostile Work Environment, Retaliation,[62] and Failure to Accommodate claims. Defendant

---

[59] *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 68, 194 P.3d 956 (internal quotation marks and citation omitted).

[60] *Mathews v. McCown*, 2025 UT 34, ¶ 46, -- P.3d -- (internal quotation marks and citations omitted).

[61] *See Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 32 n.13, 116 P.3d 271 ("[A] defamation plaintiff who is not a public figure must . . . establish negligence on the part of the defendant.").

[62] The Court does not address Plaintiff's Retaliation claim as is it dismissed above.

argues that the claim for damages is only conclusory without the requisite specificity. Defendant does not provide a legal basis to support that a complaint must plead damages associated with these claims with specificity beyond what is alleged in the Amended Complaint. Accordingly, the Court will deny the Motion as to this argument.

E. Previously dismissed claims

As discussed above, Defendant raises the concern that Plaintiff included previously dismissed claims in her Amended Complaint. It is unclear whether Plaintiff did this purposely or whether it was an oversight, however, the Court will reiterate that the claims previously discussed and dismissed without leave to amend in the Court's prior Order are dismissed with prejudice.

IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss (Docket No. 19) is GRANTED in part and DENIED in part.

DATED September 3rd, 2025.

BY THE COURT:

_____
TED STEWART
United States District Judge